# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LARRY ANDREWS, | ) |
|       Petitioner, | ) Civil Action No. 11-926 |
| v. | ) Magistrate Judge Cynthia Reed Eddy |
| KENNETH CAMERON, | ) |
|       Respondent. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and there is no basis upon which to issue a certificate of appealability.

**II. REPORT**

Petitioner, James Larry Andrews, a state prisoner presently incarcerated at the State Correctional Institution at Cresson, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction of one count of Aggravated Indecent Assault, one count of Indecent Assault, and one count of Simple Assault, for which he received an aggregate term of imprisonment of from 5 to 10 years. For the reasons that follow, the Petition should be denied.

**A. Relevant Factual and Procedural History**

Following reinstatement of his direct appeal rights, the Superior Court of Pennsylvania set forth the following relevant facts.

> On August 18, 2006, the victim in this case, F.P., age 21, was living at the residence of Andrews, age 58, and Carolyn Manning ("Manning") in Campbell, Ohio. On that date, Greg Forrest ("Forrest"), an acquaintance of Andrews, was present at the residence. In the early evening hours, Andrews was drinking

1

alcohol. He was upset and angry, and was in possession of a gun. Due to Andrews's behavior, Forrest and F.P left the residence in Forrest's car. Subsequently, Alicia Broil ("Broil"), Forrest's fianceé, arrived at the residence. According to Broil, Andrews was upset because F.P. had left with Forrest. Broil and Andrews left the residence together to find Forrest and F.P. They drove to an isolated area near Lowellville, Pennsylvania, where they found Forrest and F.P.

Broil got out of the car screaming and jumped on Forrest's car. Broil and Forrest then began arguing. Andrews went to the passenger side of Forrest's vehicle where F.P. was seated. Broil saw Andrews carrying F.P. to his van, while she kicked and screamed. Andrews dropped F.P. to the ground and hit her in the face. Broil went to F.P.'s assistance and placed her in the back of Forrest's car. At some point, F.P. got out of Forrest's car, and Forrest and Broil drove off.

According to F.P., after Andrews and Broil arrived, Andrews approached her and slid his hand into her pants and put his fingers inside her vagina. F.P. pushed him away. Andrews then started carrying F.P. to his van, while she screamed for him to stop and not to rape her. F.P. kicked herself loose, and Andrews grabbed her hair and her neck, and punched her on her chin. F.P. then went to Forrest's car with Broil's assistance. At some point, she exited the vehicle, and Forrest and Broil drove off. F.P. then got into the van with Andrews.

F.P. indicated that Andrews was angry. Andrews touched the inside of her vagina with his fingers at least twice. He also touched her breasts. Andrews had F.P. take off her clothes and bend over. He then touched her in the anal area. Andrews had F P. lay down, and touched her in the vaginal area with his hand and mouth. F.P. then got dressed, and Andrews drove her around for a couple of hours, periodically asking her to lift up her shirt.

On August 20, 2006, F.P. went to St. Elizabeth's Health Center emergency room in Youngstown, Ohio. A sexual assault nurse assisted F.P. in completing a document detailing the assault. The sexual assault nurse indicated that F.P. reported that Andrews had penetrated her vagina with his fingers three times, penetrated her anus one time with a finger, and had engaged in oral sex with her twice. F.P. further reported that she received a blow to her lower Jaw, and that the type of threats used by Andrews were "verbal and strangulation." The sexual assault nurse testified that she took the following statement from F.P.:

> [Andrews] took me aside, away from everybody else, put his hands down my pants and kissed me. From there I tried to walk away and told him to stop. He pulled me to him. I was fighting him back. Since I was fighting him, he picked me up, and I was kicking and screaming. I fell from his hands. He grabbed my hair and punched me in the face. From there, we went to the van. He put me in the passenger's seat, and he went to the driver's side. He told me to take off my clothes, then he began fondling my breasts

2

and vaginal area and put his tongue down there. He told me to sit on his lap. He was fully clothed. From there, he told me to lay down on the seat, and then he did it again, fondled me and fingered me. He told me to lay back, then put his tongue down there. I got dressed from there. From there, we drove around for about two hours, then every so often, he told me to lift up my top, and he'd touch me.

After investigating the incident, the Commonwealth charged Andrews with two counts of involuntary deviate sexual intercourse ("IDSI"), three counts of aggravated indecent assault, one count of unlawful restraint, one count of simple assault, three counts of indecent assault, and one count of criminal coercion. A jury found Andrews guilty of one count of aggravated indecent assault, one count of simple assault, and one count of indecent assault. On July 25, 2007, the trial court sentenced Andrews to a prison term of five to ten years on the charge of aggravated indecent assault, and a concurrent prison term of six months to two years on the charge of simple assault. The charge of indecent assault merged for sentencing purposes. Andrews filed a direct appeal, but that appeal was discontinued by counsel for Andrews.

On July 18, 2008, Andrews filed a *pro se* PCRA Petition, which was followed by the filing of a counseled amended Petition. After an evidentiary hearing, the PCRA court restored Andrews's direct appeal rights *nunc pro tunc* and addressed Andrews's claims of ineffective assistance of counsel in its Opinion of March 10, 2009.

ECF No. 1-4, pp. 1-5 (internal record citations omitted).

On July 19, 2010, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence. Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by that Court on February 18, 2011.

Petitioner filed his timely Petition for a Writ of Habeas Corpus with this Court on July 11, 2011 wherein he raises the following claims.

1. Whether Trial Counsel rendered ineffective assistance by failing to communicate the Commonwealth's plea offer or adequately advise him regarding the plea.

2. Whether Trial Counsel rendered ineffective assistance by failing to call character witnesses.

3. Whether Trial Counsel rendered ineffective assistance by failing to

3

> adequately prepare for trial.

4. Whether Trial Counsel rendered ineffective assistance by withdrawing his appeal.

## B. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999). A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Id*. At 260. Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir.1989);

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Moreover, a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. 28 U.S.C. § 2254(b)(2).

It appears that Petitioner presented his claims to the Pennsylvania courts through his PCRA proceeding wherein his direct appeal rights were reinstated *nunc pro tunc*. Accordingly, the Court will review his claims in accordance with the applicable standard set forth below.

### C. Standard of Review

In describing the role of federal habeas corpus proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. Greene v. Fisher, ___ U.S. ___, 132 S.Ct. 38 (2011); Cullen v. Pinholster, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Jamison v. Klem, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, Williams, 529 U.S. at 405, although district and appellate

federal court decisions evaluating Supreme Court precedent may amplify such precedent, Hardcastle v. Horn, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999)). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, (2002); Jamison, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. Williams, 529 U.S. at 407. A showing of clear error is not sufficient. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005); Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." Harrington, 131 S. Ct. at 786–87.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).[1] *See also* Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

### D. Ineffective Assistance of Counsel

All of Petitioner's claims assert ineffective assistance of counsel. In this regard, the Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (holding that the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance was unreasonable; and

---

1. *See also* Harris v. Ricci, 607 F.3d 92, 99 (3d Cir. 2010) (explaining and applying Lett).

2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. Strickland, 466 U.S. at 689. A defendant is not entitled to relief unless he makes both showings. *Id*. at 697 (holding that there is no reason for a court to address both components of the inquiry if the defendant makes an insufficient showing on one). Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id*. The Strickland standard applies equally to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2002). Pennsylvania applies the same test for ineffective assistance of counsel as the Strickland test used in federal courts. Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. Strickland, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. *Id*.at 689. "Strickland and its progeny make clear that counsel's strategic choices will not be second guessed by *post hoc* determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that

10

Petitioner received a fundamentally fair trial.

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Prejudice must be evaluated in light of the "totality of the evidence presented at trial" and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Rolan, 445 F.3d at 982 (quoting United States v. Gray, 878 F.2d 702, 712 (1989)).

In analyzing Petitioner's claims under the two-part test announced in Strickland, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings. The question of effectiveness of counsel under Strickland is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations. Berryman, 100 F.3d 1089, 1095 (3d Cir. 1996). In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies. *Id*. Likewise, a state court's determination that a decision was a tactical one is a question of fact. *Id*.

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal

11

law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (internal quotations and citations omitted). The Court further instructed:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under §2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788 (internal quotations and citations omitted).

1. Failure to Communicate Plea Offer

In his first ineffective assistance claim, Petitioner asserts that trial counsel failed to communicate a plea offer from the Commonwealth. In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that the Strickland test applies to advice given by counsel in the context of guilty plea discussions. It is undisputed that counsel's outright failure to inform a defendant of a plea offer could amount to ineffective assistance of counsel within the meaning of the first prong of Strickland. See Wheeler v. Rozum, 410 Fed. App'x 453, 456 (3d Cir. 2010). The

prejudice prong focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Hill, 474 U.S. at 58. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In its review of this claim, the Superior Court held as follows.

> Next, Andrews contends that his trial counsel, Harry Falls, Esquire ("Falls"), was ineffective for failing to present a plea offer to him.
>
> We may consider a claim of ineffective assistance of counsel on direct appeal when the trial court has held a hearing on a claim of trial counsel's ineffectiveness, and the record has been fully developed on that issue. In the present case, the trial court conducted a hearing on Andrews's claims of ineffective assistance of counsel and addressed those claims in its Opinion of March 10, 2009. Therefore, we may address Andrews's claims of ineffective assistance of counsel.
>
> . . .
>
> A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. In the present case, the trial court conducted a PCRA hearing as to Andrews's claims of ineffective assistance of counsel.
>
> At the PCRA hearing, Andrews testified that Falls did not present any plea offers to him. Falls testified that he is an attorney in the Public Defender's office and has handled sex cases for 17 years. Falls indicated that he represented Andrews at trial. Falls testified that
>
>> [I]t's unheard of in our office for us not to present a plea offer to a client. Even if somebody says, I'm going to trial, ... we, in every case, [] get a plea offer and would present it to the Defendant. We feel that's our obligation.
>
> Falls was further questioned as follows:
>
>> Q. Was there a plea offer in this case?
>>
>> A. I can't recall what it was, but I'm very confident that there was.

> Q. Do you have any documentation in the Public Defender's file that there was a plea offer?
>
> A. I don't have the file with me, but there should be documentation of it in the file.
>
> Q. Was there any documentation that you communicated this plea offer to Mr. Andrews?
>
> A. No, but from his description it sounds to me like that's what I was doing when I came ... the first two times I came over to see him, seeing what his position was on the case.
>
> On cross-examination of Falls, counsel for the Commonwealth offered a standard plea recommendation form from the District Attorney's office. The document was dated January 10, 2007, and indicated that the plea offer was for a plea to aggravated indecent assault for a sentence of two and a half to five years followed by five years of probation, as well as three years of probation for unlawful restraint. Falls stated that he did not recall the form because he sees over one thousand of them per year. Falls testified that he did not recall talking to the Assistant District Attorney about this form, but indicated that he does so in every case, unless the defendant is adamant about going to trial. Falls further testified that he could not imagine failing to communicate a plea offer to a client, especially if the client was facing a prison term.
>
> The trial court made the following determination on Andrew's claim of ineffectiveness for failing to communicate a plea offer:
>
>> This court does not find [Andrew's] bald assertion that trial counsel did not communicate to him the plea offer to be credible given trial counsel's testimony as to the long-standing practice of himself and the Public Defender's office to communicate all plea offers to a defendant. Attorney Falls was adamant that he could not imagine not communicating a plea offer to a client, especially someone facing years in prison.
>
> In light of the principle that the PCRA court determines the credibility of witnesses, we conclude that the trial court did not err in this determination.

ECF No. 1-4, pp. 8-10 (internal citations omitted).

The PCRA court's determination, as affirmed by the Pennsylvania Superior Court, is a finding of fact presumed to be correct under 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting this presumption of correctness by clear and convincing evidence. Moreover, the

14

Superior Court's determination is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* Wheeler v. Rozum, 410 Fed. App'x 453, 459 (3d Cir. 2010). Accordingly, Petitioner is not entitled to relief as to his first claim.[2]

Petitioner's second claim is that trial counsel was ineffective for failing to call witnesses. His third claim is that trial counsel was ineffective for failing to adequately prepare for trial. Specifically, Petitioner claims that trial counsel did not prepare to go to trial, did not talk to Petitioner, did not talk to Petitioner's witnesses, did not talk to Commonwealth witnesses, and counsel's cross-examination of a law enforcement witness caused more evidence against Petitioner to be admitted.

The Superior Court addressed these claims as follows.

> Next, Andrews contends that his trial counsel was ineffective for failing to properly communicate with and advise him prior to trial, failing to investigate the case, and failing to call potential witnesses. As to Andrew's claim of ineffectiveness for failing to call witnesses, he must establish that
>
>> (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense.
>
> Commonwealth v. Khalil, 806 A.2d 415, 422 (Pa. Super. 2002) (citations omitted). With regard to Andrews's claim that counsel was ineffective for failing to investigate, "[t]he law merely requires defense counsel to conduct reasonable

---

2 Included within this claim in his Petition is a statement that Defense Counsel could not answer a question about Dr. Manta. Petitioner has the burden of setting forth sufficient facts to support each claim. Moreover, Rule 2(c) of the Rules Governing Habeas Corpus Cases, 28 U.S.C. § 2254, expressly provides, in part, that the petitioner "shall set forth in summary form the facts supporting each of the grounds" specified in the petition. Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief. Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.) (1987). Petitioner's failure to sufficiently identify the facts upon which his due process claim is based precludes habeas relief. Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 & n. 12 (3d Cir. 1991).

investigations or reach rational decisions that make particular investigations unnecessary." Commonwealth v. Cox, 983 A.2d 666, 692 (Pa. 2009).

In the Instant case, at the PCRA hearing, Andrews testified that Falls never spoke with him prior to trial about his case. Andrews stated that he met with Falls in February 2007, but only for two minutes. Andrews indicated that they did not discuss the case. Andrews testified that he met with Falls again on March 8, 2007, that Falls handed him some papers and told him that he would come back to discuss them with Andrews; however, Andrews indicated that he and Falls never discussed the matter. Andrews testified that he suggested two character witnesses, Mary Shell and Cindy Farrow, to Falls and that he told Falls about this on the date the jury was selected. Andrews also testified that Falls never discussed with him whether he should file a motion to suppress.

Falls testified that he did not specifically recall meeting with Andrews before trial, but he stated that

> I do not go to trial without meeting my clients ahead of time. And that means ahead, not the day of the trial, but before the day of the trial.

Falls testified that, if Andrews had provided names and phone numbers for his character witnesses, Falls would have contacted them. However, Falls had no specific recollection of whether Falls provided him with such information. Falls stated that his trial strategy was to show that what happened between Andrews and F.P. was consensual. Falls testified that he cross-examined the Commonwealth's witnesses on the basis of the police reports and the witnesses' statements. He indicated that the witnesses were all from Ohio and would have required an interstate subpoena.

When asked to explain the extent of his pretrial involvement in this case, Falls replied as follows:

> If the Defendant is incarcerated, I usually have a plea offer and the discovery taken to the Defendant by our investigator. We see all of our clients who are incarcerated at least a week before trial. I try to go there before that because the week before trial, there is so much going on, usually two weeks before trial is when I would start serious discussion with a Defendant. You know, this was a serious case and quite frankly, I Just can't accept Mr. Andrews'[s] statement that I didn't talk to him until the day of picking the jury. That's not the way I operate and you can't go to trial that way.

Falls indicated that he did not challenge any statements made by Andrews to the police because the statements were made subject to Miranda warnings.

16

> After reviewing the record, we conclude that Andrews has failed to provide the proper support for his claim that counsel was ineffective for failing to call witnesses. Andrews has failed to establish that the proposed witnesses were available, were prepared to testify for him, and that the absence of their testimony prejudiced him so as to deny him a fair trial. As to his claim of failure to prepare and investigate the case, the PCRA court was entitled to find Falls more credible than Andrews. Falls's testimony supports the trial court's conclusion that Andrews's claim of ineffectiveness in this regard lacked merit.

ECF No. 1-4, pp. 10-13 (some internal citations omitted).

Communications between a defendant and his or her counsel are often critical to the ineffectiveness inquiry. In Strickland, the Supreme Court explained:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland, 466 U.S. at 691 (citation omitted). While strategic decisions made by an attorney after a thorough investigation of the relevant legal and factual backgrounds to a case are "virtually unchallengeable," strategic decisions made by him or her after a less thorough investigation are reasonable only to the extent that reasonable professional judgments supported the limits placed on the investigation. *Id*. at 690-691. A decision made on the basis of an incomplete investigation may often be characterized as the product of "inattention" rather than the product of "reasoned strategic judgment." Wiggins v. Smith, 539 U.S. 510, 534 (2003). For

this reason, it is axiomatic that a reasonably prudent attorney will spend an adequate amount of time discussing a case with his or her client.

At the PCRA hearing, Andrews testified that Falls had not met with him before the trial to formulate a strategy. He claimed that he had not met with Falls until the first day of the trial, and that his conversation had lasted for only about five minutes. Falls' testimony at the PCRA hearing was directly contrary to that of Andrews. Falls testified that he had been adequately prepared for Harris' trial. The trial judge found Falls' testimony to be credible. In so doing, he implicitly determined that Andrews' contradictory testimony was not credible. Campbell v. Vaughn, 209 F.3d 280, 285-290 (3d Cir. 2000). The Superior Court deferred to this credibility determination. Andrews assails the Pennsylvania courts for crediting Falls' testimony over his own testimony.

The resolution of this factual dispute is governed by 28 U.S.C. § 2254(e)(1), which provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Because the credibility determination made by the trial judge constituted a factual determination as to whether Falls had met with Andrews prior to trial, the statutory presumption of correctness is applicable. McWee v. Weldon, 283 F.3d 179, 185-186 (4th Cir. 2002). This presumption applies to the factual findings of both trial and appellate courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001). Because the trial judge's findings were left undisturbed by the Superior Court, they are presumed to be correct. Dickerson v. Vaughn, 90 F.3d 87, 90-91 (3d Cir. 1996). Andrews can rebut this presumption only upon a

18

showing of clear and convincing evidence that Falls did not meet with him prior to the first day of the trial. 28 U.S.C. § 2254(e)(1).

The record contains no persuasive evidence to support Andrews' contention that Falls was unprepared for the trial. Petitioner simply invites the Court to reconsider the credibility determinations which have already been made by the Pennsylvania courts. He does not point to any evidence to support his arguments aside from his testimony at the PCRA hearing. The clear and convincing evidence standard of proof is a demanding threshold for someone to meet. Andrews' testimony, which was contradicted by that of Falls, cannot surmount this evidentiary hurdle. Richey v. Bradshaw, 498 F.3d 344, 357 (6th Cir. 2007). Because Andrews cannot rebut the factual determinations made by the Pennsylvania courts concerning the adequacy of Falls' preparation for trial, he cannot establish that Falls' alleged lack of preparation somehow rendered his representation constitutionally deficient. Consequently, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief with respect to his second and third claims. *Accord* Moore v. DiGuglielmo, Civil No. 09–2189, 2012 WL 2928059, 7 (3d Cir. 2012) (finding no merit to petitioner's claim that trial counsel provided ineffective assistance of counsel by failing to investigate a potential witness).

Petitioner's final claim is that counsel rendered ineffective assistance by failing to prosecute his direct appeal causing the appeal process to take one year longer than necessary. Petitioner's appeal rights were re-instated and his direct appeal was pursued along with his post-conviction appeal issues. Accordingly, Petitioner was not prejudiced because the delay only caused him to receive the same result later in his period of incarceration. As such, he is not entitled to habeas corpus relief as to this claim.

### E. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

**III.   CONCLUSION**

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the applicable provisions of the Magistrate Judges Act and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.


August 30, 2012                                             /s Cynthia Reed Eddy
                                                            Cynthia Reed Eddy
                                                            United States Magistrate Judge


James Larry Andrews
HD 8493
S.C.I. Cresson
P.O. Box A
Cresson, PA 16699-0001